## Downes et al. v. Southern Savings & Building Association.

(Decided Nov. 13, 1936.)

GREENBERRY SIMMONS and ROBERT L. MEREDITH for appellants.

JOSEPH SELLIGMAN and MARSHALL HARDY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This action was brought by appellants in the chancery branch of the Jefferson circuit court, as a derivative action, against the present and some of the former directors of the appellee Southern Savings & Building Association, seeking, on behalf of themselves and all other stock and certificate holders of the association, an accounting against the defendants for their ultra vires acts and a determination of the loss and damage suffered by plaintiffs and the association by reason thereof.

Plaintiff's petition, filed on September 21, 1935, alleged that plaintiffs were the holders of "surplus certificates," which had been issued them in 1930 by soliciting salesmen of the association upon their subscribing, each for a certain number of shares of its capital stock and upon which subscriptions therefor they each paid $5 cash per share subscribed for.

This written receipt, termed a "surplus certificate," acknowledging such subscription payment, reads as follows:

"This is to certify that —— has subscribed for —— shares of the full participating Capital Stock of the Southern Savings and Building Association, and has paid into the Association, in ac-

cordance with and for the purposes set forth in the by-laws of said Association, the sum of $——.

"The legal holder of this Surplus Certificate, at such time as his proportionate share in the Surplus Fund of the Association, as defined in the by-laws, shall be equal to the amount represented hereby shall, upon the surrender of this certificate, be entitled [1] to have the amount represented hereby credited on his pass book, or [2] to convert same into an equal amount of any class of stock at such time being issued by the Association, or [3] to withdraw the amount represented hereby in accordance with the provisions of the by-laws.

"The amount represented herein is not a part of the withdrawal value of the stock.

"This certificate is transferable in accordance with the rules and regulations of this Association. * * *

"Stock Shares $100 Par Value."

It is admitted by stipulation that the stock thus subscribed for was to be paid for in monthly installments of 50 cents for each share of the par value of $100, and that pursuant to their subscription contracts, plaintiffs for awhile did make monthly payments upon their stock, when they abandoned the carrying out of the stock purchase agreement and withdrew from the association the full amounts thus paid in to the association by them on the stock. However, they were not at such time or at all repaid their subscription fees of $5 per share for the respective number of shares of stock they had each subscribed for.

The petition alleges that the plaintiff W. A. Downes had subscribed for 20 shares of stock, for which a surplus certificate was issued him, showing that he had paid for such subscription (but not upon the stock subscribed for) $100; likewise, plaintiff Carl Smith subscribed for 100 shares of stock, for which a surplus certificate was issued him showing payment of $500 therefor; and that the plaintiff E. H. Kamman had also subscribed for 80 shares, upon which subscription she had paid the sum of $400, as evidenced by her surplus certificate then given her therefor.

These surplus certificates, so received by plaintiffs, are filed as exhibits with the petition.

Notwithstanding plaintiffs had thus, some four or five years prior to the filing of this suit, withdrawn from the association all installment payments made by them upon the stock subscribed for, they have here filed a suit, alleging that, as they still remain the owners of these surplus certificates, they hold an interest in the surplus funds of the association, and, as such, here seek an accounting for the moneys which they had paid to it, they allege, "under the guise of these termed surplus certificates."

The petition further alleged by way of bolstering up their claim, that some 2,000 people had paid the association, upon the like surplus certificates as theirs, some $184,000, all of which the defendant directors of the association had illegally, and under an ultra vires contract had with their stock salesmen, paid over in full to them, and that such contract, had with them, was a wrongful and fraudulent stock-selling promotion scheme. Further it alleged that the plaintiffs and other holders of these surplus certificates were not told, nor knew, when subscribing for the stock, that all the money paid in by them on their surplus certificates was immediately paid out to the stock salesmen for obtaining their stock subscriptions; that for each subscription of stock of par value of $100, the member was thus induced to pay in cash $5 at the time of subscribing for the stock and for which a surplus certificate was given him, showing the amount of cash paid, upon his subscription, at this $5 rate per share.

Numerous instances of complaint and protest are also alleged in the petition to have been made to the association and the banking commissioner against this method followed in the selling of its stock.

Defendants' demurrer to this petition having been sustained, an amended petition was filed, wherein plaintiffs allege that they are still members of the association under the terms and provisions of the association's by-laws, and by which they as such are entitled to maintain this action against the directors of the association.

By section 16, ss. c thereof, it is provided that:

"In the event of failing to pay installments or dues and fines by a non-borrowing member for the space of more than one year, the secretary may, notify

such stock holders by mailing a notice to his or her last known post office address, and if the member fails to pay the arrears within thirty [30] days after notice is mailed, the directors may thereafter at any regular meeting, order the cancellation of such shares and declare such membership forfeited.''

Further they alleged that, after the suit was filed, defendants had a letter sent these plaintiffs, setting out this section of its by-laws, recognizing their continuous status as members, and demanding that they pay their dues or installments or forfeit their membership in the association; also they pleaded that they, as surplus certificate holders, were not told that the amounts paid by them upon their subscriptions to the stock was only a membership fee when they purchased the surplus certificates and that such charge to a subscriber of building and loan association stock was not the customary practice among reputable building associations.

Further they alleged that they, as holders of these surplus certificates, have an interest in the association, according to its further by-laws, section 18, ss. i, which is pleaded, setting out the interest thereby given surplus certificate holders in the surplus funds of the association, and which is as follows:

''The legal holder of a Surplus Certificate heretofore issued shall have an interest in the Surplus Fund of the Association in the same ratio which the sum of the dividends, paid in cash on his stock or credited on his pass book, bears to the total sum of such dividends which have been declared by the Association. At such time as his said interest in said Surplus Fund, over and above all necessary and/or legal reserves, shall equal the amount represented by his Surplus Certificate the said holder shall be entitled, upon the surrender and cancellation of said certificate [1] to have the amount represented by said Surplus Certificate credited on his pass book in the event his stock has not been fully paid for, or [2] to convert said Surplus Certificate into an equal amount of any class of stock then being issued by the Association, or [3] to withdraw the amount represented by said Surplus Certificate * * *. Any stockholder whose stock certificate, Pass Book, or Surplus Certificate has been forfeited or

cancelled, as provided for in these by-laws, shall not be construed to be a 'legal holder' of same.''

Defendants filed both general and special demurrers to the petition as amended, which were sustained. Thereupon, plaintiffs declining to plead further, the action was dismissed, with leave given for an appeal, which is now before us.

It is, under this review of the record, apparent that the only question presented is the propriety of the chancellor's ruling in sustaining these demurrers.

It is agreed that, for the purpose of testing, upon demurrer, the sufficiency of the material allegations of the petitions to state a cause of action, they must be taken as true.

Such assumption indulged, the questions thus presented by the pleadings are: (1) Whether or not the terms of the surplus certificates and of the applicable by-laws, made a part thereof, disclose any interest held by the plaintiffs under their certificates in the surplus funds of the association; and (2) whether or not they are members of the association and entitled to sue for such interest.

Both of these questions were by the chancellor, by reason of his sustaining the special and general demurrers, answered adversely to plaintiffs' contention.

Now, addressing our attention to a review of these questions, it is to be noted that the surplus certificates involved and set out supra, by their terms expressly state that each share of stock has a par value of $100. Also, this surplus certificate expressly states that ''This is to certify that ——— has subscribed for ——— shares of the full participating Capital Stock of the Southern Savings and Building Association, and has paid into the Association, in accordance with and for the purposes set forth in the by-laws of said Association, the sum of $———,'' and, further, that the interest of the holder of the surplus certificate is as follows: ''At such time as his proportionate share in the surplus fund of the Association, as defined in the by-laws, shall be equal to the amount represented hereby [he] shall, upon the surrender of this certificate,'' be entitled to certain rights of accounting therein enumerated.

Such stipulation of the certificate clearly limits and defines the interest of the holder of the certificate in the

surplus funds of the association by providing that such or any interest does not develop or arise in the surplus fund until his proportionate share in the surplus fund of the association shall be equal to the amount represented by the certificate; that is, the amount paid by the certificate holder at the rate of $5 per share subscribed for.

The terms of the certificate expressly provides, for the determination of what is the interest of the certificate holder in the surplus fund of the association, that when it becomes equal to the face value of the certificate, or as provided by section 18, ss. i, of the by-laws, the certificate holder shall then or upon such contingency have an interest in the surplus fund of the association, as hereinabove quoted and set out, and that its amount or value shall be "in the same ratio which the sum of dividends, paid in cash on his stock or credited on his pass books, bears to the total sum of such dividends which have been declared by the Association."

Here it is admitted that the appellants not only failed to carry out their contracts to purchase the stock, but some four or five years ago withdrew the amount of their deposits and whatever dividends were credited to their accounts, and thus they own no stock, either partly paid for or otherwise, upon which dividends could have been paid. Under such circumstances, the learned chancellor, in discussing what rights, if any, were to accrue to the plaintiffs under the circumstances, and taking the appellant Downes as an example, says:

"Anyhow plaintiff falls by the wayside; his stock is paid out after reaching a peak deposit of $48.06 on a $2,000.00 subscription. His surplus certificate earns nothing because his stock earns nothing. His stock earns nothing because he drew out; he did not carry thru his original undertaking to pay in $2,000.00. I do not mean he obligated himself to put in this $2,000.00. On the contrary, he had a right to draw out. But in drawing out he lost his opportunity not only to the regular earnings of the $2,000.00 [never deposited] but to such preferential treatment, if any, as his original contribution to surplus entitled him to * * *

"He lost right to all participation by his voluntary withdrawal. After drawing out, I do not see

any equity which allows him to run the policies of his corporation by "derivative action."

"Plaintiff makes a lot of the fact that he is a 'member,' altho not a stockholder. True he got his notice * * * after this suit started. But equity looks to substance. The fact is that plaintiff elected five years ago to quit. True he is out $100. But defendant did not make him quit * * * Plaintiff quit of his own accord five years ago; he retains, as far as I can see, no interest in this defendant concern. Having no interest, he can assert no interest; he cannot sue for an accounting as to that which he has voluntarily abandoned."

These views of the chancellor being in accord with our own, we conclude that he properly sustained the demurrers to the petition and petition as amended, and it follows that his judgment should be, and it is, affirmed.